UNDER SEAL                              UNDER SEAL                              UNDER SEAL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* PHILIP BLUM and DAVID SPINKS and STATE OF TEXAS *ex rel.* PHILIP BLUM and DAVID SPINKS<br><br>Plaintiffs<br><br>v.<br><br>JACK L. BAKER, FAIRMONT DIAGNOSTIC CENTER AND OPEN MRI, INC., BAY COLONY MRI AND DIAGNOSTIC CENTER, LP., JERRY McSHANE, and JOHN and JANE DOES NOS. 1-19 | Civil Action No. 4: 10cv2595<br><br>**FILED EX PARTE AND UNDER SEAL**<br><br>Jury Trial Demanded |

United States Courts
Southern District of Texas
FILED

MAY 0 6 2011

David J. Bradley, Clerk of Court

## AMENDED FALSE CLAIMS ACT COMPLAINT

### INTRODUCTION

1.    Dr. Philip Blum and Dr. David Spinks ("Relators") bring this action on behalf of the United States of America against Jack L. Baker ("Baker"), Fairmont Diagnostic Center and Open MRI, Inc. ("Fairmont Diagnostic"), Bay Colony MRI and Diagnostic Center, LP ("Bay Colony MRI"), Jerry McShane, and John/Jane Does 1-19.   Relators sue Defendants for treble damages and civil penalties arising from the Defendants' conduct in violation of the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.* ("FCA").  The violations arise out of requests for payment by Medicare, Medicaid, and other government agencies and programs (hereinafter, collectively the "Government Healthcare Programs") based on false claims.

2.    This action is also brought on behalf of the State of Texas (pursuant to The Texas Medicaid Fraud Prevention Law, (Tex. Hum. Res. Code §§ 36.001 - 36.132).

3.    This Amended Complaint describes Defendants' practices of inducing doctors to make patient referrals by violating the Federal Fraud and Abuse Anti-Kickback and/or the Prohibited Referral Provisions of 42 U.S.C. § 1320a-7b and 42 U.S.C. § 1395nn (hereinafter referred to as the Anti-Kickback Law and Stark Law, respectively).  These practices include, but are not limited to,

1

UNDER SEAL                              UNDER SEAL                              UNDER SEAL

**UNDER SEAL**                **UNDER SEAL**                **UNDER SEAL**

paying the salary of referral coordinators in referring doctors' offices in return for referrals of imaging studies to defendants; provision of phony or excessive compensation for medical directorships; paid membership on illusory scientific advisory boards; and gifts to doctors and their staff.

4.     As required by the FCA, 31 U.S.C. § 3730(b)(2), the Relators have provided to the Attorney General of the United States and to the United States Attorney for the Southern District of Texas, simultaneous with and/or prior to the filing of this Complaint, a statement of all material evidence and information related to the Complaint. This disclosure statement is supported by material evidence known to Relators at the time of their filing, establishing the existence of the Defendants' legal responsibility for the false claims. Because the statement includes attorney-client communications and work product of Relators' attorneys, and is submitted to the Attorney General and to the United States Attorney in their capacity as potential co-counsel in the litigation, the Relators understand this disclosure to be confidential.

5.  Relators are informed and believe that the false claims described herein, including violations of Stark Law and Anti-Kickback Law, began at least 10 years before the filing of Relators' initial Complaint, and continue to date.

6.  Relators bring this action based on their direct knowledge and also on information and belief. None of the actionable allegations set forth in this Amended Complaint are based on a public disclosure as set forth in 31 U.S.C. §3730(e)(4). Notwithstanding same, Relators are original sources of the facts alleged in this Amended Complaint. In February 2010, Relator Philip Blum called the hotline of the Inspector General of the United States Department of Health and Human Services and described the illegal activities set forth in this Amended Complaint.

7.  As may be required by the Texas Medicaid Fraud Prevention Act, the Relators have provided to the appropriate officials of Texas, simultaneous with and/or prior to the filing of this Complaint, a statement of all material evidence and information ("Disclosure Statement") related to this Complaint, as applicable. This Disclosure Statement is supported by material evidence known to the Relators at the time of the filing of this Complaint, establishing the existence of Defendants' false

2

**UNDER SEAL**                **UNDER SEAL**                **UNDER SEAL**

claims. Because this Disclosure Statement includes attorney-client communications and work product of Relators' attorneys, and is submitted to the state agencies in their capacity as potential co-counsel in the litigation, the Relators understand this disclosure to be confidential.

## JURISDICTION AND VENUE

8. The acts proscribed by 31 U.S.C. S 3729 *et seq.*, and complained of herein occurred in the Southern District of Texas, and Defendants do business in the Southern District of Texas. Therefore, this Court has jurisdiction over this case and all Defendants pursuant to 31 U.S.C. 3732 (a), as well as under 28 U.S.C. § 1345. This Court has pendent jurisdiction over this case for the claims brought on behalf of the State of Texas pursuant to 31 U.S.C. §3732(b), inasmuch as recovery is sought on behalf of the state which arises from the same transactions and occurrences as the claims brought on behalf of the United States.

9. Venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because the acts proscribed by 31 U.S.C. §3729 *et seq.*, occurred in this District and is also proper pursuant to U.S.C. §1391(b) because the claims that this Amended Complaint describes arose in this District. Further, the Defendants do business in this District.

## PARTIES

10. Relator, Dr. Philip S. Blum, is a resident of Texas. He is a neurologist with his practice located in Pasadena, Texas.

11. Relator, Dr. David Spinks, is a resident of Texas. He is a family physician with his practice located in Deer Park, Texas.

12. Defendant Dr. Jack L. Baker is a resident of Texas. He is a radiologist and the owner of Defendants Fairmont Diagnostic and Bay Colony MRI.

13. Defendant Fairmont Diagnostic Center and Open MRI, Inc., is a Texas corporation located at 3692 East Sam Houston Parkway, Pasadena, TX 77505.

14. Defendant Bay Colony MRI and Diagnostic Center, LP, is a Texas corporation located at 2401 Fm 646 Rd W, Dickinson, TX 77539.

3

**UNDER SEAL**          **UNDER SEAL**                    **UNDER SEAL**

15.     Defendant Jerry McShane is a resident of Texas with his place of business at 321 W. San Augustine, Deer Park, TX 77536.

16.     John/Jane Does 1-19 are residents of the state of Texas and practice medicine in and around the Houston, Texas area.

## THE THREE MAJOR FEDERAL HEALTHCARE PROGRAMS

17.     In 1965, Congress enacted Title XVIII of the Social Security Act, known as the Medicare Program, to pay for the costs of certain healthcare services.  Entitlement to Medicare is based on age, disability, or affliction with certain diseases. See 42 U.S.C. §§ 1395 to 1395ccc.  There are two general components to the Medicare program, Part A and Part B.

18.     The Medicaid program, as enacted under Title XIX of the Social Security Act of 1965, 42 U.S.C. § 1396 *et seq.*, is a system of medical assistance for indigent individuals.  Although federally created, the Medicaid program is a joint federal-state program in which the United States provides a significant share of the funding for the program.

19.     TRICARE Management Activity, formerly known as CHAMPUS, is a program of the Department of Defense that helps pay for covered civilian health care obtained by military beneficiaries, including retirees, their dependents, and dependents of active-duty personnel.  10 U.S.C. §§ 1079, 1086; 32 C.F.R. Part 199.  TRICARE contracts with fiscal intermediaries and managed care contractors to review and pay claims, including claims submitted by Defendants.

## LAWS

20.     The False Claims Act provides, in pertinent part, that any person who:

> (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; . . . is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410), plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(1).

**UNDER SEAL**          **UNDER SEAL**                    **UNDER SEAL**

UNDER SEAL                    UNDER SEAL                    UNDER SEAL

21.     The False Claims Act is the government's primary tool to recover losses due to fraud and abuse by those seeking payment from the United States. *See* S. Rep. No. 345, 99 Cong., 2nd Sess. at 2 (1986), reprinted in 1986 U.S.C.C.A.N 5266.

22.     The Anti-Kickback Law prohibits any person or entity from making or accepting payment to induce or reward any person for referring, recommending or arranging for federally-funded medical services, including services provided under the Medicare, Medicaid, and TRICARE programs. In pertinent part, the statute states:

> Whoever (1) knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment under a Federal health care program (as defined in subsection (f) of this section), (2) at any time knowingly and willfully makes or causes to be made any false statement or representation of a material fact for use in determining rights to such benefit or payment,

shall be guilty of a felony.  42 U.S.C. § 1320a-7b(b).

23.     The Stark Law, 42 U.S.C. § 1395nn, is also known as the Physician Self-Referral Law. The regulations are at 42 C.F.R. § 411.350 *et seq*.  Under the Stark law, if a physician (or immediate family member) has a direct or indirect financial relationship (by way of ownership or compensation) with an entity that provides any of the health services identified in the statute ("designated health services" or "DHS"), the physician cannot refer patients to the entity for DHS and the entity cannot submit a claim to Medicare, Medicaid, or TRICARE for such DHS unless the financial relationship comes under a statutory or regulatory exception.

24.     Liability under the Stark Law involves three elements: (1) a physician refers a patient to an entity for a designated health service; (2) the physician and the entity have a financial relationship, and (3) none of the Stark exceptions apply.

25.     The case law is well-established, including that of the Fifth Circuit, that the submission of claims in violation of the Stark Law can give rise to False Claims Act liability.  Every UB-92, CMS-

UNDER SEAL                    UNDER SEAL                    UNDER SEAL

UNDER SEAL                    UNDER SEAL                    UNDER SEAL

1450, CMS-1500, and other claim forms submitted to Government Healthcare Programs by Defendants for services rendered to patients who were unlawfully referred in violation of the Stark Law and/or Anti-Kickback Law were also false.

## ALLEGATIONS

26.    Government Healthcare Programs depend on physicians and other health care professionals to exercise independent judgment in the best interests of patients. Financial incentives tied to referrals' have a tendency to corrupt the health care delivery system in ways that harm the federal programs and their beneficiaries. For example, corruption of medical decision-making can result when a physician refers a patient to a provider on the basis of the physician's financial self-interest instead of the patient's best interests. Unfair competition can result when honest providers have difficulty competing with unscrupulous providers who pay to generate business. This results in systemic corruption of federal healthcare programs and defrauding of the public.

27.    Defendant Jack L. Baker is a diagnostic radiologist and the owner of Defendants Fairmont Diagnostic and Bay Colony MRI. These Defendants perform imaging studies - magnetic resonance imaging, computed tomography, x-rays, sonograms, and similar studies. Because insurance companies will not pay imaging studies unless they are ordered by patients' treating physicians, Defendants depend almost entirely on referrals from other doctors.

28.    For at least 10 years, the Defendants named in paragraph 29 have used illegal means in order to obtain imaging study referrals. These illegal means are set forth in the following paragraphs 29-36.

29.    Defendants paid for employees of referring doctors to serve as "Referral Coordinators." In return for paying for the employee, the Referral Coordinator referred all radiology studies (absent a

6

UNDER SEAL                    UNDER SEAL                    UNDER SEAL

compelling circumstance such as incompatible insurance) to Defendants.  On information and belief, Defendants paid for Referral Coordinators in seven different medical practices.

30.   Doctors with general practices have multiple reasons for referring patients - for many different kinds of tests in addition to radiology and, most significantly, to other doctors for other or more specialized medical services.  Referring patients for imaging studies is not a full-time job.  Accordingly, by paying for a full-time employee Defendants did more than simply pay kickbacks for referrals, which is illegal enough; Defendants effectively provided an additional employee for the the referring doctors who accepted this illegal arrangement.

31.   In one medical practice, Defendants paid the salary of the Referral Coordinator from at least 2004.  Defendants used Fairmont to do so.  Fairmont paid the Referral Coordinator as if she were an employee of Fairmont, withholding taxes, depositing the salary directly into the employee's bank account, and providing the employee with W-2s each year.  The employee referred all feasible radiology referrals to Fairmont.  Referring radiology studies constituted only about 20 percent of the Referral Coordinator's time; the rest was spent on other duties for the practice where she worked.  This arrangement came to an end only in 2009 when one of the doctors in the practice where the Referral Coordinator actually worked instructed the Referral Coordinator to ask Fairmont whether the employment arrangement with Defendants was legal.  The doctor ended the arrangement when an attorney for Defendants, in person, told the doctor that the arrangement was illegal.  Defendants paid the Referral Coordinator in salary in excess of $100,000 between 2004 and 2009.

32.   Another scheme Defendants employed to pay off doctors for referrals was by employing doctors as Medical Directors for Defendants without having to do any work.  "Medical Director" is a real position.  Radiology clinics hire Medical Directors to advise on the practice, equipment, and ethics.  This is a part-time position, involving a few hours a month, and generally pays a few thousand dollars a month.  On information and belief, Defendants had up to 20 Medical Directors at a time who performed no work at all.  For Defendants, medical directorships were simply a means to pay illegal bribes for referrals.  One "Medical Director" received $12,500 in 2009 for no work at all.

7

**UNDER SEAL**                 **UNDER SEAL**                 **UNDER SEAL**

33.    The experience of one competing radiology group is illustrative of the corruption engendered by Defendants' illegal activities. That group had great difficulty hiring Medical Directors. On a number of occasions, when the group tried to hire a doctor to serve in this position, the response it received was the following: Baker pays us more than you propose in return for no work. Why should we want to take this on for you? Another response was: Baker pays us X thousands of dollars; pay us more and we will refer you business.

34.    Another scheme used by Defendants was paying referring doctors to serve on a "Scientific Advisory Board." Defendants had no use for such a board and the supposed members of the board performed no work for the payments they received. The Scientific Advisory Board served no purpose other than to disguise illegal bribes to refer radiology studies.

35.    Defendants also provided expensive gifts and entertainment to referring doctors and their staff. Tickets to professional sporting events were routine. Defendants held annual Christmas parties at restaurants for doctors and their staff. Defendants held other "appreciation" events at various locales. Recently, when a competing radiology group tried to persuade a referring practice to refer studies, Defendants bought iphones or ipods for the entire staff, with the result that the referring practice decided not to send business to the radiology group competing with Defendants.

36.    Approximately four to five years ago, several employees of Defendants quit their employment. Defendant Baker was concerned that the former employees might reveal the illegal activities in which Defendants were engaged. Defendant Baker accordingly offered the employees a generous severance package in return for their agreement not to speak about any of their activities while employed by defendants. One of the employees spoke to Defendants' attorney before accepting the agreement. Defendants' attorney told the employee that the means by which Defendants obtained referrals were illegal and that the employee should get away from Defendants as fast as the employee could.

8

**UNDER SEAL**                 **UNDER SEAL**                 **UNDER SEAL**

37.   John/Jane Does 1-19 are physicians practicing in the Houston area who acted as Medical Directors for Defendants Banker, Fairmont Diagnostic Center, and/or Bay Colony MRI, received payment for doing so, did little or no work for the payments, and agreed to refer imaging studies to these Defendants in return for being paid as Medical Directors.

38.   Defendant Jerry McShane acted as a Medical Director for Fairmont Diagnostic Center, received payment for doing so, did little or no work for the payments, and agreed to refer imaging studies to Defendant Fairmont Diagnostic Center in return for being paid as a Medical Director.

## COUNT 1 - FALSE CLAIMS ACT

39.   Relators repeat and reallege each allegation contained in paragraphs 1 through 38 above as if fully set forth herein.

40.   This is a claim by Relators, on behalf of The United States of America, for treble damages and penalties under the FCA, 31 U.S.C. §§ 3729 *et seq.*, against Defendants for knowingly causing to be presented false claims to Government Healthcare Programs. From in or about 2000 through present, in the Southern District of Texas, Defendants have knowingly and willfully presented and caused to be presented false claims.

41.   Defendants have presented and caused to be presented claims for payment to the Government Healthcare Programs, knowing such claims were false.

WHEREFORE, Relator respectfully requests this Court to enter judgment against Defendants as follows:

(a) That the U.S. be awarded damages in the amount of three times the damages sustained by the U.S. because of the false claims alleged within this Amended Complaint, as the Federal Civil False Claims Act, 31 U.S.C. § 3729 *et seq.*, provides;

(b) that civil penalties of $10,000 be imposed for each and every false claim that Defendants caused to be presented to the Government Healthcare Programs;

(c) That pre- and post-judgment interest be awarded, along with reasonable attorney's fees, costs, and expenses which the Relators necessarily incurred in bringing and pressing this case;

(d) That the Relators be awarded the maximum amount allowed pursuant the False Claims Act;

UNDER SEAL                    UNDER SEAL                    UNDER SEAL

(e) That this Court award such other and further relief as it deems proper.

## COUNT II - TEXAS FALSE CLAIMS ACT

42.  Relators repeat and reallege each allegation contained in paragraphs 1 through 39 above as if fully set forth herein.

43.  Medicaid is jointly financed by the federal government and the states.  The Secretary of the U.S. Department of Health and Human Services determines each state's federal share of most healthcare costs using a formula based on average state per capita income compared to the U.S. average. These matching rates are updated every year to reflect changes in average income.

44.  The matching rate of the State of Texas over the past ten years has been approximately 60 percent; that is, the state must pay approximately 40 percent of most Medicaid costs.

45.  The Texas Health and Human Services Commission administers the Texas Medicaid Program.

46.  This *qui tam* action is also brought by Relators on behalf of the State of Texas to recover double damages and civil penalties under V.T.C.A. Hum. Res. Code §§ 36.001 *et seq.*

47.  V.T.C.A. Hum. Res. Code § 36.002 provides liability for any person who

(1) knowingly makes or causes to be made a false statement or misrepresentation of a material fact to permit a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

(2) knowingly conceals or fails to disclose information that permits a person to receive a benefit or payment under the Medicaid program that is not authorized or that is greater than the benefit or payment that is authorized;

* * *

(4) knowingly makes, causes to be made, induces, or seeks to induce the making of a false statement or misrepresentation of material fact concerning:

* * *

(B) information required to be provided by a federal or state law, rule, regulation, or provider agreement pertaining to the Medicaid program;

(5) except as authorized under the Medicaid program, knowingly pays, charges, solicits, accepts, or receives, in addition to an amount paid under the Medicaid program, a gift, money, a donation, or other consideration as a condition to the provision of a service or product or the continued provision of a service or product if the cost of the service or product is paid for, in whole or in part, under the Medicaid program;

10

UNDER SEAL                    UNDER SEAL                    UNDER SEAL

UNDER SEAL                    UNDER SEAL                    UNDER SEAL

\* \* \*

(9) knowingly enters into an agreement, combination, or conspiracy to defraud the state by obtaining or aiding another person in obtaining an unauthorized payment or benefit from the Medicaid program or a fiscal agent;

(13) knowingly engages in conduct that constitutes a violation under Section 32.039(b).

48.     Defendants violated V.T.C.A. Hum. Res. Code § 36.002 and knowingly caused thousands of false claims to be made, used, and presented to the State of Texas by their deliberate and systematic violation of federal and state laws, including the federal Anti-kickback Act, the Stark Law, and § 36.002.

49.     The State of Texas, by and through the Texas Medicaid program and other state healthcare programs, and unaware of Defendants' conduct, paid the claims submitted by healthcare providers and third party payers in connection therewith.

50.     Compliance with applicable Medicare, Medicaid, and various other federal and state laws cited herein was an implied, and upon information and belief, also an express condition of payment of claims submitted to the State of Texas in connection with Defendants' conduct. Compliance with applicable Texas statutes and regulations was also an express condition of payment of claims submitted to the State of Texas.

51.     Had the State of Texas known that Defendants were violating the federal and state laws cited herein and/or that the claims submitted in connection with Defendants' conduct were premised on false and/or misleading information, it would not have paid the claims submitted by healthcare providers and third party payers in connection with that conduct.

52.     As a result of Defendants' violations of V.T.C.A. Hum. Res. Code § 36.002, the State of Texas has been damaged in an amount in excess of millions of dollars exclusive of interest.

53.     Defendants did not, within 30 days after they first obtained information as to such violations, furnish such information to officials of the State responsible for investigating false claims

11

UNDER SEAL                    UNDER SEAL                    UNDER SEAL

violations, did not otherwise fully cooperate with any investigation of the violations, and have not otherwise furnished information to the State regarding the claims for reimbursement at issue.

54.     Relators are citizens of Texas with direct and independent knowledge of the allegations of this Amended Complaint, who have brought this action pursuant to V.T.C.A. Hum. Res. Code § 36.101 on behalf of themselves and the State of Texas.

55.     This Court is requested to accept pendent jurisdiction of this related state claim as it is predicated upon the identical facts as the federal claim, and merely asserts separate damage to the State of Texas in the operation of its Medicaid program.

WHEREFORE, Relators respectfully request a trial by jury for all issues so triable, and for this Court to award the following damages to the following parties and against Defendants:

To the State of Texas:

(1) Two times the amount of actual damages which the State of Texas -has sustained as a result of Defendants' conduct;

(2) A civil penalty of not less than $5,000 or more than $10,000 pursuant to V.T.C.A. Hum.. Res. Code § 36.052(a)(3)(b) for each false claim which Defendants cause to be presented to the State of Texas;

(3) Prejudgment interest; and

(4) All costs incurred in bringing this action.

To Relators:

(1) The maximum amount allowed pursuant to V.T.C.A. Hum. Res. Code § 36.110, and/or any other applicable provision of law;

(2) Reimbursement for reasonable expenses which Relators incurred in connection with this action;

(3) An award of reasonable attorneys' fees and costs; and

(4) Such further relief as this Court deems equitable and just.

DATED this 4th day of May, 2011.              Respectfully submitted,


                                         /s/
                                         Geoffrey Bestor, Esq.
                                         4204 Maple Terrace
                                         Chevy Chase, MD 20815
                                         240-463-8503
                                         gbesq@bestorlaw.com

12

**SEALED CASE**                 **SEALED CASE**                 **SEALED CASE**

Civil Action No. 4:10cv2595

## Proof of Service

I hereby certify that the Relators have provided to the Attorney General of the United States and

to the United States Attorney for the Southern District of Texas a copy of the Amended Complaint by

service by overnight mail in sealed envelopes marked "SEALED CASE" at the addresses set forth

below.

       Attorney General of the United States
       919 Pennsylvania Avenue, N.W.
       Washington, DC 20530-0001
       (202) 514-2000

       United States Attorney for the Southern District of Texas
       919 Milam Street
       Suite 1500
       Houston, Texas 77002
       Attn: Assistant United States Attorney Andrew Robb
       (713) 567-9766

Dated: May 4, 2011

                              /s/
                              Geoffrey Bestor
                              4204 Maple Terrace
                              Chevy Chase, MD 20815
                              240-463-8503

**SEALED CASE**                 **SEALED CASE**                 **SEALED CASE**

**SEALED CASE**                     **SEALED CASE**                     **SEALED CASE**

Civil Action No. 4:10cv2595

## Proof of Service

I hereby certify that the Relators have provided to the Office of the Attorney General of Texas,

Medicaid Fraud Unit, a copy of the Amended Complaint by service by overnight mail in sealed

envelopes marked "SEALED CASE" at the address set forth below.

> Office of the Attorney General
> Medicaid Fraud Control Unit
> P.O. Box 12307
> Austin, TX 78711-2307
> (512) 463-2011

Dated: May 4, 2011

_____/s/_____
Geoffrey Bestor
4204 Maple Terrace
Chevy Chase, MD 20815
240-463-8503

**SEALED CASE**                     **SEALED CASE**                     **SEALED CASE**